UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

BONNIE SUE UPLINGER, )
)
Plaintiff, )
) 1:08-cv-845-SEB-TAB
vs. )
)
MICHAEL J. ASTRUE, Commissioner of Social Security, )
)
)
Defendant. )

**ENTRY**

Bonnie Sue Uplinger ("Uplinger") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*. For the reasons explained herein, the Commissioner's decision is AFFIRMED.

***Background***

Uplinger filed her application for a period of disability and disability insurance benefits on December 6, 2005, alleging a disability onset date of August 2, 2005. (R. at 26, 78-80.) This claim was initially denied on March 17, 2006, and upon reconsideration on July 19, 2006. (R. at 30-33, 37.) On August 2, 2006, Plaintiff filed a timely written request for a hearing. (R. at 43.) Plaintiff appeared and testified at the hearing on August

8, 2006, in Danville, Illinois, with Administrative Law Judge Barbara Welsch ("the ALJ") presiding via video teleconference from Peoria, Illinois. (R. at 479.) James Raginas, a vocational expert, testified at the hearing, and Plaintiff was represented by attorney David A. Tuggle. Id. On October 5, 2007, the ALJ issued an unfavorable determination finding that Uplinger was not disabled nor entitled to benefits. (R. at 14-25.) Uplinger then filed a timely Request for Review of the decision with the Social Security Appeals Council on November 29, 2007, and after considering additional information, the Appeals Council denied Uplinger's request for review on April 17, 2008. (R. at 10-13.) This denial of review made the ALJ's decision final. See Getch v. Astrue, 539 F.2d 473, 480 (7th Cir. 2008). The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ made the following relevant findings: 1) Uplinger had not engaged in gainful activity since her alleged onset date of May 22, 2005; (2) Uplinger had the following severe impairments: degenerative disc disease of the spine post surgery, left AC joint osteoarthritis, and left greater trochanteric bursitis; (3) None of these impairments, alone or in combination, met the requirements of a "disabling impairment," 20 C.F.R. § 404.1520(d); (4) Uplinger had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567 and 416.967, except that she needed

work allowing her to sit or stand as needed, should not perform prolonged walking, could not crouch, crawl or kneel, and could only occasionally bend or stoop; (5) Uplinger was unable to perform any past relevant work, 20 C.F.R. § 404.1565; (6) Uplinger was 46 years old on the alleged disability onset date; (7) Uplinger was "not disabled" pursuant to SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2; and (8) Considering Uplinger's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could have performed. 20 C.F.R. § 404.1560(c) and 404.1566.

## ***Discussion***

### *I. Applicable Law*

To be eligible for DIB, a claimant must prove that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in the Social Security regulations is used to determine disability status. Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves her unable to perform her past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920 [the "steps"]. A finding of disability requires an affirmative answer at either step three or step five."

Id. "An affirmative answer leads either to the next step or, in steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled." Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985).

After step three, the ALJ must assess the claimant's residual functional capacity. 20 C.F.R. § 404.1520. This determination has three components: physical abilities, mental abilities, and other impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). In order to place an individual at a particular residual functional capacity level, the individual must be able to perform the full range of work in that category on a daily basis. Frey v. Bowen, 816 F.2d 508 (10th Cir. 1987). The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's

decision is supported by substantial evidence and is otherwise free of legal error. Kendrick v. Shalala, 998 F.2d 455, 458 (7th Cir.1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971) (quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)).

***II. Analysis***

In the present case, the ALJ found that Uplinger was not gainfully employed and had a severe impairment, but that the impairment did not meet or equal any impairment listed in the regulations to preclude substantial gainful activity, in particular because Uplinger remained capable of performing sedentary work at a significant number of jobs in the national economy. Thus, the determination of benefits turned on step five. Uplinger contends that the ALJ's residual functional capacity ("RFC") finding was not substantially supported by the record because the ALJ did not consider all of her impairments or properly assess her credibility.

*A. Residual Functional Capacity Finding*

First, Uplinger contends that the ALJ failed to consider all of the limitations to Uplinger's ability described by Dr. Bender. Dr. Bender opined that Uplinger could only

sit or stand 15 minutes at a time, could rarely lift 20 pounds and never more, rarely twist, stoop, crouch and climb ladders, and that Uplinger had shoulder and leg pain resulting from her back pain. According to Uplinger, the ALJ should have concluded, based on SSR 96-9p, that her nearly complete inability to stoop/bend and her shoulder and leg pain rendered her incapable of doing even sedentary work.

The Commissioner rejoins that the ALJ's conclusion was based on substantial evidence because he relied upon Dr. Davis's opinion that Uplinger needed no special treatment for her hip, which had a good range of motion, as well as the September 2006 and August 2007 MRIs of Uplinger's shoulder, which showed that it was "normal." (R. at 21, 397.) The ALJ's conclusion related to Uplinger's stoop/bend ability was supported by an August 2005 MRI, a 2006 X-ray, and an April 2007 CT Scan. Moreover, the ALJ relied upon the opinions of Drs. Wang, Bell, and Mobasser, which led the ALJ to conclude that Uplinger had a legitimate limitation. Based on this limitation, the ALJ concluded specifically that Uplinger required frequent sit/stand accommodations, noting that she would need to change positions as often as she wanted. Given that this opinion conformed to SSR 96-9p and relied upon copious relevant medical evidence, we find that this portion of the ALJ's findings was based on substantial evidence.[1]

Next, Uplinger argues that the ALJ erred in deeming her to be free from mental

---

[1]Uplinger's further contention that the ALJ should not have relied on the vocational expert's opinion related to her sit/stand option is also undercut by the ALJ's sound reliance on the above medical evidence.

impairment. According to Uplinger, the ALJ failed to consider evidence in the record indicating that she had severe depressive disorder with a GAF of 52, (R. at 317-19), and generalized anxiety with a GAF of 50, (R. at 351). The Commissioner responds that the ALJ's findings in this regard were consistent with medical resources of record, namely, State agency reviewing psychologists' conclusions that she had no severe mental impairment. (R. at 249-58). Uplinger's challenge relies only on the two GAF scores, which are merely momentary snapshots and are not sufficient by themselves for a finding of disability. Griffith v. Callahan, 138 F.3d 1150, 1152 (7th Cir. 1998). Given the ALJ's complete review of the four areas of mental function, her notation that Uplinger's doctor concluded in August 2006 that her depression was related to her domestic situation, and her reliance upon medical sources of record, we find that the ALJ's decision regarding Uplinger's mental impairment was based on substantial evidence.

Next, Uplinger contends that the ALJ failed to get a proper medical source opinion about what she "can still do despite [her] impairment," as required by 20 C.F.R. § 404.1519n, but instead relied upon the information provided by State agency reviewers, who did not review the entire record. As the Commissioner points out, Uplinger's characterization of the ALJ's finding in this regard is misplaced. The ALJ did not rely upon the State agency reviewers' opinions to the extent that they would have been altered by a complete review of the record. The ALJ relied upon the functional capacity questionnaire filled out by Dr. Bender. (R. at 23.) Contrary to Uplinger's contention, the ALJ conformed her assessment to the restrictions described by Dr. Bender, and in relying

upon this and other medical evidence of record, the ALJ never, as alleged, "played doctor," but instead made a proper finding based on substantial evidence. See Skarbek v. Barnhart, 390 F.3d 500, 503 (7th Cir. 2004).[2]

*B. Credibility*

Uplinger contends that the ALJ's decision to deem her less than fully credible was based upon the ALJ's "flawed lay opinion as to what the objective evidence shows," as well as a conclusion related to Uplinger's daily activities that was not supported by the evidence. ALJs are required to make express, rational credibility findings. See SSR 96-7p. When assessing the credibility of the claimant's statements, the kinds of evidence that must be considered in addition to the objective medical evidence include: (1) The claimant's daily activities; (2) The location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any of the claimant's related medication; (5) Treatment the claimant receives related to the claimed disability; (6) Any other measures the claimant uses to relieve pain or other symptoms; and (7) Any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. Id.; 20 C.F.R § 404.1529(c).

---

[2]The ALJ's consideration of all of this evidence and the conclusion that she drew related to Uplinger's actual shoulder and hip limitations also demonstrate that the ALJ's findings accounted for the aggregate of Uplinger's ailments. See Golembiewski v. Barnhart, 322 F.3d 912, 918 (7th Cir. 2003) (holding that the ALJ must "consider the aggregate effect of all ailments, including those that in isolation are not severe).

In assessing credibility, the ALJ considered various factors beyond her findings related to daily activities and the objective evidence, including the type and strength of Uplinger's medications, their side effects, the intensity of her pain, and the use of conservative treatment like physical therapy. It was proper for the ALJ to consider the discrepancy between the extreme levels of pain alleged by Uplinger and the fact that she was never referred to a pain clinic, was given a TENS unit for her extreme pain, and was able to care for herself, cook, do laundry, shop, and use a computer. (R. at 23). The ALJ considered all of this in the context of the objective medical evidence, including the opinion of Dr. Bender related to Uplinger's pain level, see Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000), as well as all of the other proper considerations of the medical evidence previously discussed. Because the ALJ provided extensive supporting evidence for her credibility finding, we afford that finding deference. See Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995).

*C. Step-Five Finding*

Uplinger contends that the hypothetical questions about her abilities posed by the ALJ to the vocational expert were faulty because the ALJ did not provide to the expert information regarding Uplinger's inability to sit, stand, or walk for more than 15 minutes at a time or of her mental limitations. (R. at 14-15, 132, 136, 211-12, 218, 297, 309, 445.) Uplinger also contends that the ALJ's failure to consider her shoulder limitations renders the ALJ's reliance on the vocational expert's opinion unreliable because all of the jobs

identified by the vocational expert required frequent use of the arms. This contention is unavailing. As previously discussed, the ALJ's conclusions related to Uplinger's mental impairment and shoulder and hip pain were supported by substantial evidence. Therefore, because the hypothetical questions posed conformed to that sound finding, the vocational expert's opinion met the Commissioner's burden at step five. See Cass v. Shalala, 8 F.3d 552, 555-56 (7th Cir. 1993).

Next, Uplinger contends that the vocational expert's opinion should have been probed more fully because it conflicted with the Dictionary of Occupational Titles ("DOT"). However, the DOT is just one of many possible vocational resources. 20 C.F.R. § 404.1566(d). As the Seventh Circuit has held, the ALJ may rely upon vocational expert testimony, even where it contradicts the DOT. Powers, 207 F.3d at 436. Accordingly, the ALJ's finding in this regard was proper.

The ALJ's findings related to other jobs that Uplinger could have performed, including the consideration of Uplinger's sit/stand limitation, was supported by substantial evidence. Even if Uplinger were correct that the ALJ's reliance was misplaced, 3,100 jobs would nonetheless remain that she could have performed, which is a significant number as a matter of law. Lee v. Sullivan, 988 F.2d 789, 794 (7th Cir. 1993).

### ***III. Conclusion***

For all of the foregoing reasons, there was no reversible error in the assessment of

Uplinger's application for DIB. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. Under these circumstances, Uplinger is not entitled to relief in this action. Judgment consistent with the Entry shall now issue.

IT IS SO ORDERED.

Date: 09/30/2009

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Frederick J. Daley Jr.
DALEY DEBOFSKY & BRYANT
fdaley@ddbchicago.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

SSA (Court Use Only)
SOCIAL SECURITY ADMINISTRATION (SSA) added for email notification purposes to the SSA General Counsel, pursuant to A.O. memorandum of 7/19/2007.
.NULL.